We'll next move to the case of Gladney v. Pollard, No. 13-3141, and we'll hear first from Mr. Lendinger. Good morning, Your Honors. May it please the Court, Counsel, my name is Michael Lendinger. I represent Mr. Myron Gladney before the Court today. We're here today, Your Honors, because Mr. Gladney has established his actual innocence on two grounds. First, new, reliable evidence in the form of the Calhoun testimony that was not presented at trial. And second, the subsequent case law in the form of State v. Head that establishes that as a matter of law, Gladney could not have been convicted of the crime of first-degree intentional homicide. Because Mr. Gladney has established his actual innocence on these two grounds, his constitutional claims can be heard on the merit as the Shloop gateway has been opened, and the untimeliness of his petition is irrelevant. As to the first ground, the new, reliable evidence in the form of the Calhoun testimony, under this Court's precedent in Gomez v. Jamin, Calhoun's testimony was not presented at trial. Nothing more is needed. As a reminder, the Calhoun testimony was the corroborative, the critical, first-hand corroborative testimony of the dice game robbery of Gladney that occurred approximately two and a half weeks before the incident, the ultimate incident at question. There was no testimony, there was no evidence that corroborated Gladney's self-defense claim at trial. The respondent in the district court latches on to a couple witnesses at trial, Mr. Bridges and Detective Temp, but neither of those individuals provided the first-hand corroborative testimony that Mr. Calhoun would have. Bridges' testimony merely summarized, he stated that he heard that the decedent, Mr. Wilson, was going to pay back Mr. Gladney, but he was not there. And Bridges' further was his testimony, the trial court gave the falsus uno instruction, which essentially allowed the jury to discredit his entire testimony. Bridges' testimony was completely irrelevant. And second, Detective Temp had heard from others that a robbery had occurred. However, he couldn't confirm it. Exactly, Your Honor. Mr. Lindinger, let me ask you, if I can skip ahead a step or two in this analysis. I tend to agree that the Calhoun testimony qualifies as new, not merely cumulative. But let me ask you about the relationship between these two different theories. Does your claim based on the Calhoun evidence depend to any degree on whether Petitioner Gladney is entitled to the benefit of the holdings in State v. Head and its subjective test of the imperfect self-defense theory? No, Your Honor, those are independent theories. Okay. Let me, well, whether it applies or doesn't apply. Let's assume a jury believes everything Calhoun says, that this robbery occurred. Why would a jury be required to acquit when the test, as I understand it, would be at best purely subjective as to what was in Mr. Gladney's mind? And he's going armed to confront this fellow who robbed him a couple of weeks earlier. Why would they be required to say this wasn't imperfect self-defense? Well, Your Honor, the critical point is the jury instruction and what the trial court said repeatedly was the word reasonable, objective reasonableness. And that element was simply never in the statute. It was never an element as far as the imperfect self-defense theory. Wait a minute. That sounds like you're arguing about Head and the instructions. Yes. Why would a jury who accepted the story that there was in fact a robbery have been required to conclude that Gladney acted with this so-called imperfect self-defense? Because, Your Honor, Gladney forwarded the imperfect self-defense theory. He testified that he believed his life was in danger. He testified to that. Right. As well as there were other, both the state and defendant witnesses on page, I believe, 40 of my brief. They were citing a separate appendix. Each of them set forth that Mr. Gladney and the decedent were struggling for the gun. And as far as acquitting or mitigating from the first degree intentional homicide down to second, the state never rebutted the fact that Gladney had this objective state of mind. They latched on to he did not prove the objective element. And that alone enabled the jury to discredit any self-defense theory because the jury instructions were nearly one and the same. The word reasonableness permeated throughout. I'm glad you mentioned page 40 of your brief because it looked to me there as if you're arguing that the state court believed Gladney. Yes, Your Honor. I didn't necessarily read it that way. I saw it in the context of discussing whether there was sufficient evidence to give a recklessness instruction and concluding no, even if we believe Gladney. You're absolutely right, Your Honor. In the context of those statements, it was on the post-conviction, the initial post-conviction filings that Gladney submitted, and that was in the context of first or second degree reckless homicide, whether that instruction would have been given. But it's important to note that the trial court specifically recognized that Gladney testified to these facts, that he feared for his life. That is the definition of meeting the subjective level, the subjective element of self-defense under the statute as properly interpreted. If you believe him, right? Yes, Your Honor. So what if the judge and jury didn't believe him? Well, I think, Your Honor, that underlines the importance of the Calhoun testimony that was never provided. There was the Fifth Circuit case, the Smith v. Drek, that I cited in my brief that had nearly identical facts to this. And in that case, similar to this one, where there was the lack of investigation and effective assistance, in that case, the defendant was left by himself. He had his story, but the violent characteristics of the decedent was never presented. And that was a critical fact. If it's a straight and effective assistance of counsel claim and Strickland prejudice, I understand that argument. You've got to aim here at a much narrower window. Under Schlup and McQuiggan, any reasonable juror would have to acquit. And the examples that are given in the court's opinion in Schlup, scientific evidence, we all have DNA evidence in mind, physical evidence that would be inconsistent with guilt, et cetera. But evidence corroborating testimony about the defendant's state of mind seems harder to reach. I agree, Your Honor. It's not the typical actual innocence type of evidence, the DNA tests that were not available 15 years ago that is more common. But this court's statement in Gomez states that there's no restrictions in Schlup as far as kind of what type of evidence could qualify as new reliable evidence. And Calhoun's corroborative firsthand account of that robbery that, in the jury's mind, probably didn't even happen after Detective Temp testified that he couldn't find an incident report. That is a critical fact. And Calhoun's testimony, coupled with Gladney's unrebutted testimony of his subjective beliefs as far as self-defense, would have led the jury to no other conclusion than to believe the imperfect self-defense claim and mitigate the crime from first degree to second degree, intentional homicide. As Judge Bauer is ready to point out, you're into your rebuttal time. Well, Your Honors, if Your Honors have no further questions, I will save my two minutes for rebuttal. I'll give you an extra minute or two, but if I could just ask you briefly, in your brief at page 51, note 7, you quoted some testimony from a state trial court. One of the problems in exploring why this counsel talked to Calhoun, didn't talk to Calhoun, didn't call him, was the difficulty of trying to decide this, figure this out so many years later. And it looks like the state trial court was saying there, in essence, I think Mr. Backus had a strategic reason for this. Aren't we stuck with that finding? Aren't you stuck with that finding? No, Your Honor. Under the proper standard review for denial of an actual innocence claim is de novo. And I would vehemently disagree with the trial court in the Mackner hearing's conclusion that he didn't find anything wrong, that the trial counsel was a good defense attorney, when unfortunately I pointed out in the brief that he was reprimanded multiple times for similar incidents right in the same time frame as the Gladney case was going on. Thank you. And for the respondent warden, Mr. Gansner. Good morning. Good morning. May it please the court. The court, I believe, has targeted what I believe is the salient and the really most important factor involved in this case. It is the state's view that this case should be disposed of on the grounds that the habeas petition in this case, as the district court concluded, was untimely. And that the untimeliness of the petition is not excused under the Schlup standard of actual innocence. As the court has appropriately pointed out, that standard is extraordinarily difficult. It requires that in the context of this case, the evidence which Mr. Gladney contends his trial counsel was ineffective in failing to present, would have been the corroborative testimony of a person with whom a few weeks earlier, Mr. Gladney had had a confrontation in which he claims he was robbed by the man a few weeks later. He would shoot. Two points to be made. Shoot and kill. Two points to be made. While it is Mr. Gladney's position now that that evidence would exonerate him and that no reasonable juror would have had any response to this new evidence presented with it, but to acquit. First, it was corroborative evidence of what Mr. Gladney had himself testified to. We know the jury was informed that there had been this prior confrontation. Second, and I think it's easy to overlook this, but it strikes me as a fairly obvious point. The presentation of testimony by Mr. Gladney as to what had happened previously, which he characterizes now as showing his fear of Mr. Wilson, and that if Mr. Calhoun had been able to testify that yeah, there had been this previous gunplay, and a previous robbery, that that would further corroborate his view that he was fearful of his life when once again a few weeks later confronted by Mr. Wilson, or in an incident with Mr. Wilson. It is entirely conceivable, and it strikes me as altogether reasonable, that the jury might very well have viewed that evidence as evidence supporting the notion that Mr. Gladney was acting purposely in the incident that led to the death of the victim here. That is, that he was seeking revenge for what had happened earlier. This is not the kind of situation that I think fits the Schlepp versus Dello definition of evidence that would unquestionably, in the mind of any juror, establish innocence. I mean, we know from the testimony here that there were multiple gunshots fired in the fatal episode, that there was a wrestling for a gun, that it resulted in Mr. Gladney injuring himself, apparently a bullet struck him, but then multiple shots were fired at the victim who died. I think under these circumstances, the combination of the prior event, the multiple gunshots here, the fact that Mr. Gladney very well could have been viewed by the jury as having a real problem with Mr. Wilson, that he wanted to set straight over what had happened earlier, very well suggests an alternative impact that this evidence could have had in this case, which I think at the very least raises a significant doubt about its effect on any juror that would have heard it under the Schlepp standard, and I would suggest that it does not mean, it does not satisfy the Schlepp standard. Was the evidence clear that Mr. Gladney took the gun with him to confront Wilson? I believe that is correct. It was Gladney's gun. As I understand it, yes, Your Honor. I would point out that that is my understanding, and I would ask opposing counsel to correct me on that if I'm wrong, but I believe that. I'll ask, of course. That's my understanding. Thank you, Your Honor. Thank you, Your Honor. So it's the state's view, and I simply want to emphasize something that's terribly obvious. If we're wrong about all of this, and if this court concludes that the habeas petition in this case, its admitted, its conceded untimeliness is excused by the extraordinary event of a successful claim of actual innocence, the remedy in this case is for this case to go back to the district court, and for the district court to put this case back on a track towards consideration of the merits of his claims after a response is filed. You were never ordered to show cause, right? Our first involvement in this case is when the appeal was filed. Okay. Let me ask, if I can, Mr. Ganser, I know you're very familiar with the ins and outs of this area of the law, but given the posture that we have the case before us now, would you agree that we need to assume that Calhoun's testimony is credible at this point? Yes. We haven't had a hearing. Absolutely. You haven't had a chance to test it. Absolutely, absolutely. I think that has to be assumed for the sake of evaluating just the substance of the allegation, an unproven allegation which at this point has to be assumed capable of being proven. Thank you. Thank you, Your Honor. Okay. Mr. Lindager, rebuttal. Just a couple key points on rebuttal, Your Honors. First, I did want to correct Mr. Ganser's statement. I want to direct the court to separate appendix 91. I believe this was part of the closing statements that Mr. Gladden's attorney made in lines 7 to 12. He states, I wanted to establish, one, the first witness, Mr. Boyd, said that Mr. Gladden carries guns. I want you to know that. Not that he just brought the gun for this occasion. Just bought that gun for this occasion. I bought the gun. I apologize for misspeaking. There were other parts of the transcript, but that was the gist of Mr. Boyd's testimony to establish that Mr. Gladden, however contrary to society's beliefs, that's what his perception was. He carried a gun. That was his typical everyday manner. Wisconsin, that's now a constitutional right in Wisconsin. That's true, Your Honor. But that was the fact that I wanted to correct Mr. Ganser's statement. Well, is there any doubt that Gladden brought the gun with him to confront Wilson? Well, I think what this trial court's attorney, his trial court's attorney was stating there, was it was his everyday, he did this every day. He carried a gun with him every day. It wasn't unique to this circumstance that he brought a gun only to confront Mr. Wilson. He did this every day. Second, I wanted to just highlight the subsequent case law, the State v. Head, the other ground of the actual innocence that we didn't quite get to in the opening. This went unrebutted by the State in their opposition to my opening brief, and that is under State v. Head, under a proper recitation, a proper interpretation, of the relevant homicide and self-defense statutes, Mr. Gladden is actually innocent of the crime of first-degree intentional homicide. The Vosgian case, although not from this circuit, the Ninth Circuit, is pretty well on point here. There, there was some, I see I have a lot of time, if I could make that point. In Vosgian, there was a finding that the defendant was guilty of around, I believe, 10 counts. There was subsequent case law that related to three of those counts. He made the actual innocence argument. The Ninth Circuit agreed that that subsequent case law applied to those three counts. He satisfied the Shloop standard for that, and that is exactly the case here. And I want to leave the court just with the one last thought that in McQuiggins and Shloop, the whole point of the actual innocence is such that constitutional errors don't result in the incarceration of individuals. And as we set forth in our opening brief, we believe there are two very… Innocent individuals. Innocent individuals, that we believe there are two very strong constitutional claims here, Your Honor. Thank you. Thank you very much. And, Mr. Lindinger, did you and your firm serve at the request of the court in this case? I'm sorry, the request? Did you serve as counsel at the request of the court in this case? Yes, Your Honor. Both you and your firm have thanks of the court for your superb representation of Mr. Gladney, and we have also appreciation for the state's excellent presentation of its views, both in briefs and orally. Thank you, Your Honor. Thank you all.